UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
DARRELL W. WILLIAMS,                )
                                    )
            Plaintiff,              )
                                    )
      v.                            )        Civil Action No. 03-1380 (PLF)
                                    )
CHUCK CONNER, Acting Secretary,     )
United States Department of Agriculture,[1] )
                                    )
            Defendant.              )
_____ )

OPINION

        This matter is before the Court on defendant's motion to dismiss for lack of

subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Plaintiff Darrell W. Williams brings suit under the Equal Credit Opportunity Act ("ECOA"), 15

U.S.C. §§ 1691 et seq., the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551 et seq., and

the Due Process Clause of the Fifth Amendment.  He alleges that the defendant, in his official

capacity as the Secretary of the United States Department of Agriculture ("USDA"), has violated

his due process rights under the Fifth Amendment, acted in an arbitrary and capricious manner in

violation of the APA, and discriminated against him on the basis of his race in violation of the

ECOA.  Upon consideration of the motion, the opposition, the reply and the entire record in this

case, the Court grants judgment for the defendant with respect to plaintiff's ECOA claim, denies

_____

        [1]     The first amended complaint named Ann Veneman, former Secretary of
Agriculture, as the party defendant.  The Court subsequently substituted her successor, Mike
Johanns, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.  The Court now
substitutes Chuck Conner, Mr. Johanns' successor, pursuant to that rule.

without prejudice defendant's motion respecting plaintiff's Fifth Amendment claim, and

dismisses plaintiff's APA claim for failure to state a claim.[2]

## I. BACKGROUND

Plaintiff Darrell Williams is an African-American farmer.  See First Amended

Complaint ("Am. Compl.") ¶ 8.  In 1981, he obtained a loan from the USDA's Farmers Home

Administration ("FmHA").  Id. ¶ 13.  That loan was in the amount of $95,390 at a 5% annual

rate of interest.  Def. Ex. 2, Promissory Note dated April 24, 1981 ("1981 Note"); see also Am.

Compl. ¶ 13.  The promissory note specified that the loan's principal and interest would be

repaid in 41 installments over 40 years, with the first installment of $5,560.00 due on January 1,

1982.  See 1981 Note.  Mr. Williams pledged his farm located near Palestine, Texas as collateral

for the loan.  Def. Ex. 3, Real Estate Deed of Trust for Texas.  On October 24, 1986, Mr.

Williams rescheduled his 1981 loan, on which a principal balance of $93,446 was still owing, for

repayment over 30 years in 31 installments at an annual rate of interest of 8.25%.  Def. Ex. 4,

Promissory Note dated October 24, 1986.

In 1992, Mr. Williams' loan was accelerated when he was deemed to be in

default.  Am. Compl. ¶ 8.  He alleges that the acceleration was in violation of the USDA's own

---

[2]      As discussed below, the Court treats defendant's motion as a motion for summary judgment with respect to plaintiff's ECOA and Fifth Amendment claims, and as a motion to dismiss for failure to state a claim with respect to plaintiff's APA claim.

The following briefs were submitted in connection with the motion: Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss Plaintiff's First Amended Complaint ("Mot."); Plaintiff's Opposition to Defendant's Motion to Dismiss First Amended Complaint ("Opp."); Defendant's Reply Brief in Support of Motion to Dismiss Plaintiff's Amended Complaint ("Reply"); Plaintiff's Supplemental Filing in Opposition to Defendant's [Court Designated] Motion for Summary Judgment ("Pl. Supp."); and Defendant's Supplemental Filing in Support of Motion for Summary Judgment ("Def. Supp.").

rules.  Id.  Mr. Williams wrote a letter at that time to his then-Congressman, Craig Washington,

saying that he was "having difficulty negotiating a settlement of a delinquent loan" with the

FmHA.  Def. Ex. 5, Letter from Darrell Williams to the Honorable Craig Washington, dated

December 2, 1992.  He went on to state that after he requested a meeting with FmHA's County

Supervisor, he was told that FmHA has a Primary and Preservation Loan service program for

debt restructuring, but he was refused consideration because he had not submitted a complete

application within 60 days.  Id.  Nowhere in his letter did Mr. Williams make any reference to

race or to discrimination.  Instead he asked Congressman Washington to assist him in his appeal

of the defendant's decision not to permit him to participate in the program for debt restructuring.

Congressman Washington apparently inquired into the matter.  In response, then-

Acting FmHA Administrator Sharron S. Longino wrote a letter to Congressman Washington

explaining that on January 11, 1993 an FmHA National Appeals Staff hearing officer had

reversed the initial decision to deny plaintiff's application for loan servicing as untimely.  Def.

Ex. 7, Letter from Acting Administrator Sharron S. Longino to the Honorable Craig A.

Washington, dated May 21, 1993.  Ms. Longino further stated to Congressman Washington that

the FmHA would give Mr. Williams "every consideration so that he may resolve his delinquency

and continue to farm."  Id.

On December 16, 1994, the FmHA sent Mr. Williams a notice of intent to

accelerate his loan once again because he was $28,422 in arrears on his payment and had not

asked for or accepted an offer for primary loan service programs.  See Def. Ex. 8, Notification of

Intent to Accelerate or Continue Acceleration of Loans and Notice of Your Rights, dated

December 16, 1994; see also Def. Ex. 9, Domestic Return Receipt, signed by Darrell Williams.

The notice set forth the steps that Mr. Williams could take before this acceleration would begin,

3

including requesting a meeting with the FmHA County Official, appealing the decision, or voluntarily signing over the property used as security and asking to be released from the debt. See id.

On January 31, 1995, the FmHA issued a report pursuant to 7 C.F.R. § 1955.15(b) recommending foreclosure on the plaintiff's Palestine farm. See Def. Ex. 10, Report on Real Estate Problem Case, dated January 31, 1995. According to that report, Mr. Williams was 48 months in default and owed a total of $157,042.70 -- $93,446.18 in principal and $31,301.91 in interest. See id. at 1. The market value of the property was assessed at $98,000. Id. The report further stated that Mr. Williams had been sent procedural notices giving him "[i]nformation for referral, rescheduling, reamortization, preservation and primary servicing" by mail and in person, but that he had not submitted the "[i]nformation needed for granting servicing options." Id. at 2.

On May 19, 1995, Mr. Williams submitted an application to settle his debt, listing the total unpaid balance as $151,000, and offering $98,000 to settle the debt in full. See Def. Ex. 11, Application for Settlement of Indebtedness, dated May 19, 1995; see also Am. Compl. ¶ 38. That offer was not accepted, and Mr. Williams' farm was sold in September 1995. See Sworn Statement of Darrell W. Williams ("Williams State.") at 1; Am. Compl. ¶¶ 37-38. Between May 1995 and June 29, 2001, Mr. Williams claims that he received no further communications from the USDA regarding his debt. See Am. Compl. ¶¶ 42-44.

On June 29, 2001, Mr. Williams received a notice via certified mail concerning his continued debt. See Williams State. at 1. He received another notice concerning his debt in January 2002, informing him that he owed a total of $132,913.72, and that the Farm Service Agency (the successor agency to the FmHA) was preparing to refer his debt to the United States

4

Department of Treasury for collection.  See id. at 2; Def. Ex. 20, January 3, 2002 Notice

Advising of Potential for Referral to Treasury for Cross-Servicing and the Availability of Debt

Settlement ("January 3, 2002 Letter") at 1.  That letter further informed Mr. Williams of various

programs available to him for settling the remaining debt.  See January 3, 2002 Letter at 2.  Mr.

Williams claims that during the time period in which he did not receive, or claims not to have

received, notice of his debt, the USDA fraudulently concealed from him the fact that it was

continuing to assert the debt against him.

## II.  DISCUSSION

### A.  Standard of Review

### 1.  Rule 12(b)(1): Lack of Subject Matter Jurisdiction

When deciding a motion to dismiss for lack of subject matter jurisdiction under

Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court may dispose of the motion on

the basis of the complaint alone or may consider materials beyond the pleadings.  "[W]here

necessary, the court may consider the complaint supplemented by undisputed facts evidenced in

the record, or the complaint supplemented by undisputed facts plus the court's resolution of

disputed facts."  Herbert v. Nat'l Acad. of Sciences, 974 F.2d 192, 197 (D.C. Cir. 1992).  This

Court has interpreted Herbert to allow a court to "consider such materials outside the pleadings

as it deems appropriate to resolve the question whether it has jurisdiction to hear the case."

Scolaro v. D.C. Bd. of Elections and Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000) (citing

Herbert v. Nat'l Acad. of Sciences, 974 F.2d at 197), aff'd Scolaro v. D.C. Bd. of Elections and

Ethics, Civil Action No. 00-7176, 2001 U.S. App. LEXIS 2747, at *1 (D.C. Cir. Jan. 18, 2001);

see also Erby v. United States, 424 F. Supp. 2d 180, 182-83 (D.D.C. 2006).

2.  Rule 12(b)(6): Failure to State a Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of a complaint if a plaintiff fails "to state a claim upon which relief may be granted."  FED. R. CIV. P. 12(b)(6).  In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6).  The Court noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'"  Id. at 1965 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see also Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1964-65; see also Papasan v. Allain, 478 U.S. 265, 286 (1986).  The Court stated that there was no "probability requirement at the pleading stage," Bell Atlantic Corp. v. Twombly, 127 S. Ct. at 1965, but "something beyond . . . mere possibility . . . must be alleged[.]"  Id. at 1966.  The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," id. at 1965, or must be sufficient "to state a claim for relief that is plausible on its face."  Id. at 1274.  The Court referred to this newly-clarified standard as "the plausibility standard."  Id. at 1968 (abandoning the "no set of facts" language from Conley v. Gibson).

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the complaint."  Erickson v.

Pardus, 127 S. Ct. at 2200;  see also Bell Atlantic Corp. v. Twombly, 127 S. Ct. at 1965; Summit

Health, Ltd. v. Pinhas, 500 U.S. 322, 325 (1991).  The complaint "is construed liberally in the

plaintiffs' favor, and [the Court should] grant plaintiffs the benefit of all inferences that can be

derived from the facts alleged."  Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276

(D.C. Cir. 1994); see also Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002); Sparrow v.

United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  While the complaint is to be

construed liberally in plaintiff's favor, the Court need not accept inferences drawn by the

plaintiff if those inferences are unsupported by facts alleged in the complaint; nor must the Court

accept plaintiff's legal conclusions.  See Kowal v. MCI Communications Corp., 16 F.3d at 1276;

Browning v. Clinton, 292 F.3d at 242.

 Where it is clear that the plaintiff "cannot possibly win relief," the Court need not

await a formal motion under Rule 12(b)(6), but may, on its own initiative, dismiss a complaint

for failure to state a claim.  See Best v. Kelly, 39 F.3d 328, 331 (D.C. Cir. 1994) (quoting Baker

v. Director, United States Parole Comm'n, 916 F.2d 725, 726 (D.C. Cir. 1990) (per curiam)); 5B

CHARLES A. WRIGHT AND ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 at

409 n.4 (3d ed. 2004).

### B.  ECOA Claim

### 1.  ECOA Statute of Limitations

 Defendant moves to dismiss plaintiff's ECOA claim under Rule 12(b)(1) of the

Federal Rules of Civil Procedure, arguing that the Court lacks subject matter jurisdiction over

this claim because it falls outside the ECOA's statute of limitations.  According to the defendant,

the ECOA's statute of limitations is jurisdictional because it defines "the terms of [the United

States'] consent to be sued." Mot. at 12 (quoting <u>FDIC v. Meyer</u>, 510 U.S. 471, 475 (1994)).

The Court disagrees.

"When the United States consents to be sued, the terms of its waiver of sovereign

immunity define the extent of the court's jurisdiction." <u>United States v. Mottaz</u>, 476 U.S. 834,

841 (1986). Where it is contained in the waiver legislation itself, the statute of limitations may

"constitute a condition on the waiver of sovereign immunity." <u>Id</u>. (quoting <u>Block v. North</u>

<u>Dakota</u>, 461 U.S. 273, 287 (1983)). Such a condition is to be strictly construed in favor of the

sovereign. <u>Irwin v. Dep't of Veteran Affairs</u>, 498 U.S. 89, 94 (1990). The Supreme Court also

has held that to apply the principles of equitable tolling to statutes of limitation governing suits

against the federal government in a case where Congress has expressly waived sovereign

immunity usually amounts to "little, if any, broadening of the congressional waiver" of

sovereign immunity. <u>Id</u>. at 96 (holding that, absent explicit instructions from Congress to the

contrary, "the same rebuttable presumption of equitable tolling applicable to suits against private

defendants should also apply to suits against the United States"). The D.C. Circuit has read

<u>Irwin</u> to mean that, in general, federal statutes of limitation governing suits against the

government are not jurisdictional, <u>see</u> <u>Norman v. United States</u>, 467 F.3d 773, 775 (D.C. Cir.

2006), and therefore are subject to principles of equitable tolling. <u>See</u> <u>Chung v. United States</u>

<u>Dep't of Justice</u>, 333 F.3d 273, 276 (D.C. Cir. 2003) ("[I]t is reasonable to presume the

Congress, unless it said otherwise, expected the Government to face equitable tolling in litigation

because equitable tolling is a traditional feature of the procedural landscape.").

Applying these principles, the Court concludes that the ECOA's statute of

limitations does not create a jurisdictional requirement merely because it is applied to the federal

government in this case. First, the ECOA prohibits discrimination not just by the federal

8

government, but by "any creditor . . . with respect to any aspect of a credit transaction" on the

basis, *inter alia,* of race. 15 U.S.C. § 1691(a), (a)(1).  It applies to the federal government not

through a specific section setting forth the waiver of sovereign immunity, but through the

definition of what party may be sued -- namely, a "creditor" -- and the government may be a

creditor under the statute.  The section of the ECOA containing definitions, 15 U.S.C. § 1691a,

defines the term "creditor" as:

> any person who regularly extends, renews or continues credit; any
> person who regularly arranges for the extension, renewal, or
> continuation of credit; or any assignee of an original creditor who
> participates in the decision to extend renew, or continue credit.

15 U.S.C. § 1691a(e).  The ECOA's definitional section further states that the term "person"

includes a "government or governmental subdivision or agency," thus making the government

subject to suit as a "creditor" within the meaning of the statute.  15 U.S.C. § 1691a(f); see Moore

v. USDA, 55 F.3d 991, 994-95 (5th Cir. 1995) (holding that ECOA waives the United States'

sovereign immunity under same analysis).  No part of this subsection of the statute contains a

conditional time limit on the period when suit may be brought against the United States.

Second, an entirely separate section of the statute sets forth the ECOA statute of

limitations, and an examination of that section does not suggest that it should be read to

condition the government's waiver of sovereign immunity as set forth in the definitional section.

The two-year statute of limitations contained in 15 U.S.C. § 1691e(f) applies to all suits under

the ECOA, not just those that are brought against the government.  It states simply that (with two

exceptions not applicable to this case), "[n]o . . . action shall be brought later than two years

from the date of the occurrence of the violation."  15 U.S.C. § 1691e(f).

Because the ECOA statute of limitations is not a condition on the government's waiver of sovereign immunity, the failure to comply with the statute of limitations is not a jurisdictional failing. The government's motion therefore should not have been brought under Rule 12(b)(1) of the Federal Rules of Civil Procedure. Rather, the motion should have been presented as one for failure to state a claim under Rule 12(b)(6) or, in this case, because the government relies on evidence beyond the four corners of the complaint to support its motion, as a motion for summary judgment. See FED. R. CIV. P. 12(b). Because the government's argument, as presented, converts its motion to one for summary judgment with respect to plaintiff's ECOA claim, the Court issued an Order on September 10, 2007 providing notice to the parties that this motion would be treated as one for summary judgment and permitting them to supplement the materials already before the Court.[3] Each side has submitted a supplemental filing.

    2.   Fraudulent Concealment and Tolling the ECOA Statute of Limitations

Defendant argues that because Mr. Williams' cause of action accrued at the time of the foreclosure and subsequent sale of his property in 1995, this lawsuit, filed in 2003, is outside the ECOA's two-year statute of limitations. 15 U.S.C. § 1691e(f) (no action "shall be brought later than two years from the date of the occurrence of the violation"). Mr. Williams responds that the Court should equitably toll the ECOA statute of limitations because the defendant fraudulently concealed his debt. He asserts that his alleged injury was "inherently unknowable" because "the information regarding whether the USDA continued to assert a debt

---

[3]    The government also has relied on materials beyond the pleadings in connection with its Fifth Amendment due process argument. See *infra* at 17-20.

against [him] between 1995 and 2001 was inherently within the USDA's possession and control and if the USDA did not communicate this information to [him] during that time, [he] would have (and had) no knowledge of it."  Opp. at 11.

        "Statutes of limitations commonly begin the running of the period from the date the cause of action accrued."  Norwest Bank Minnesota Nat'l Assoc. v. FDIC, 312 F.3d 447, 451 (D.C. Cir. 2002).  The general accrual rule for remedial civil actions is that the "cause of action accrues either when a readily discoverable injury occurs or, if an injury is not readily discoverable, when the plaintiff *should have* discovered it."  Communications Vending Corp. of Arizona, Inc. v. FCC, 365 F.3d 1064, 1074 (D.C. Cir. 2004) (emphasis added).  The so-called "discovery rule" applies "in cases in which the injury is 'not of the sort that can readily be discovered when it occurs'"; in such cases, "a cause of action accrues and the limitations period begins to run only when 'the plaintiff discovers, or with due diligence should have discovered the injury that is the basis of the action.'"  Sprint Communications Co. v. FCC, 76 F.3d 1221, 1226 (1996) (quoting Connors v. Hallmark & Son Coal Co., 935 F.2d 336, 341-42 (D.C. Cir. 1991)).

        Moreover, "[i]f . . . the plaintiff did not discover the injury because the defendant fraudulently concealed material facts related to its wrongdoing, then the court will deem the cause of action not to have accrued during the period of such concealment -- unless the defendant shows that the plaintiff would have discovered the fraud with the exercise of due diligence."  Sprint Communications Co. v. FCC, 76 F.3d at 1226 (citing Riddell v. Riddell Washington Corp., 866 F.2d 1480, 1491 (D.C. Cir. 1989)).  To establish such fraudulent concealment, the plaintiff must typically show an affirmative act of concealment -- in other words, "'some misleading, deceptive or otherwise contrived action' to conceal information

11

material to [his] claim." <u>Sprint Communications Co. v. FCC</u>, 76 F.3d at 1226 (quoting <u>Hobson</u>

<u>v. Wilson</u>, 737 F.2d 1, 34 (D.C. Cir. 1984)).  While a defendant's silence is usually not enough,

it may be sufficient where there is an affirmative duty on the part of the defendant to disclose

relevant information.  <u>Sprint Communications Co. V. FCC</u>, 76 F.3d at 1226 (citations omitted).

Plaintiff asserts that defendant fraudulently concealed his alleged injury because

that injury was "inherently unknowable" to him and "the information regarding whether the

USDA continued to assert a debt against [him] between 1995 and 2001 was inherently within the

USDA's possession and control and if the USDA did not communicate this information to [him]

during that time, [he] would have (and had) no knowledge of it."  Opp. at 11.  He argues that it

was reasonable for him to assume that his debt was satisfied by the foreclosure and sale of his

land because the USDA had refused his offer to buy the land for $98,000, the appraised value of

the land, which "could have been easily over $100,000 given the passage of time and the

improvements Williams had made in working the land for over 14 years." <u>Id</u>.

Plaintiff's argument comes down to this:  Because he assumed that his debt to the

defendant was satisfied, defendant's failure to provide him with additional notifications

constitutes a fraudulent concealment of his debt.  This argument does not satisfy the requirement

that Mr. Williams demonstrate an affirmative act of fraudulent concealment by the USDA.  Nor

does it demonstrate that the defendant's silence constituted a failure on its part to satisfy an

affirmative duty to disclose relevant information in accordance with the laws and regulations

under which plaintiff received his loan.

"Borrowers are expected to pay their debts to the Farmers Home Administration

or its successor agency . . . in accordance with their agreements and ability to pay."  7 C.F.R.

§ 1951.2 (1995).[4]  Borrowers are also "responsible for repaying principal and interest on a timely

basis pursuant to the loan documents . . . maintaining, protecting, and accounting to the FmHA

or its successor agency . . . for all real estate security, and complying with other loan

requirements."  7 C.F.R. § 1965.3 (1995).  The Code of Federal Regulations sets forth extensive

provisions detailing how farm loans are to be administered, including lengthy chapters on

servicing and collection, debt settlement and the servicing of real estate security for farm loan

programs.  See 7 C.F.R. §§ 1951, 1956, 1965 (1995).   In particular, 7 C.F.R. § 1956 sets forth

procedures for the adjustment, cancellation, charge-off, compromise or forgiveness of debts

owed to the FmHA.  Involuntary liquidation of secured real property is addressed in 7 C.F.R.

§ 1965(b).  None of these provisions permit the debtor to assume that his debt has been settled

simply because his land has been foreclosed and sold at public auction, nor impose an

affirmative duty on the FmHA to apprise plaintiff of his outstanding debt.

   The section on involuntary liquidation sets forth the procedures under which the

FmHA was permitted to proceed with the cash sale of secured real estate to be applied against

the debt.  See 7 C.F.R. § 1965.26(f) (1995).  That section describes how a borrower may obtain a

release of liability from his debt.  See  7 C.F.R. § 1965.26(f)(5) (1995).  "Proceeds from the sale

of security must be applied on the debtor's account."  7 C.F.R. § 1956.109(c) (1995).  The

procedure that the State Director must follow after approving or rejecting a debt settlement

application is set forth in 7 C.F.R. § 1956.138.   None of these regulations provides or implies

that a debtor who has defaulted on his debt and whose property has been foreclosed,

---

   [4]  All C.F.R. regulations cited by the Court are from 1995, the version applicable to the foreclosure proceedings on plaintiff's farm.

involuntarily liquidated, and sold at auction may simply walk away and assume that the debt is settled.

Even if one were to accept -- in the face of the multiple regulations governing the administration of farm loans and the procedures a debtor in default must follow to obtain forgiveness or otherwise settle his debt -- plaintiff's argument that he reasonably assumed his debt was satisfied, this argument must fail as it does not square with the facts.  Plaintiff states that because the USDA rejected his offer to settle his total debt for $98,000 -- the estimated market value of his Palestine, Texas farm -- he could reasonably assume that his farm was sold for at or around that price.  He therefore concludes that the debt would have been settled by such a sale.  Setting aside the basically illogical notion that foreclosed property sold at auction is necessarily or likely will bring in a price higher than the appraised value, plaintiff's argument ignores the fact of his actual debt.  At the time that his farm was sold, and just prior to the sale when Mr. Williams applied to settle his farm loan, the amount he was in arrears was not $98,000, but was over $150,000, as he acknowledged in his own application for settlement of the debt.  See Def. Ex. 11, Application for Settlement of Indebtedness.  Mr. Williams himself filled out an application for settlement of indebtedness stating that the unpaid balance of his loan was $151,000.  Id.[5]  He cannot deny that he was on notice that his debt was far in excess of the estimated appraised value of the land in question.  What is clear from the plaintiff's own admission is that he was on notice as of 1995 that he had a debt to the FmHA of at least $151,000 upon which he had defaulted.

_____

[5]      Although Mr. Williams stated in the application that his debt totaled $151,000, as of January 23, 1995, the FmHA had calculated his debt at $157,042.70.  See Def. Ex. 10, Jan. 25, 1995 Report on Real Estate Problem Case.

Mr. Williams' ECOA claim, filed in 2003 -- fully eight years after the accrual of his action -- therefore is barred by the two-year statute of limitations.  Setting aside the issue of whether plaintiff did or did not receive any of the notices sent by the USDA in the period between 1995 and 2003 concerning his debt, any action or inaction on the part of the USDA cannot be characterized as an act of concealment when plaintiff was clearly aware that he had, or likely had, a debt that had not yet been satisfied.  Thus, plaintiff's ECOA claim clearly falls outside ECOA's statute of limitations.  The Court will enter summary judgment in favor of defendant on this claim.[6]

## C.  APA Claim

Defendant argues that Mr. Williams' claim under the Administrative Procedure Act must be dismissed because the APA is only available where there is no other adequate remedy.  See Mot. at 14.  The Court notes, once again, that the government's APA argument appears to be properly brought under Rule 12(b)(6) of the Federal Rules for failure to state a claim and not as a jurisdictional matter under Rule 12(b)(1).  Defendant's argument is that Mr. Williams' APA claim, as set forth in his Amended Complaint, cannot survive because there is an adequate remedy under the ECOA and the APA limits judicial review to "agency action made

---

[6]      The government also argues that because Mr. Williams did not opt out of the Pigford class action lawsuit, even if his claim was not barred by the statute of limitations, it would be barred by the doctrine of res judicata. The Court agrees, but notes that the government's res judicata argument should have been brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as a motion to dismiss for failure to state a claim because "[r]es judicata is an affirmative defense." Stanton v. District of Columbia of Appeals, 127 F.3d 72, 76 (D.C. Cir. 1997) (citing Paulin v. Bowen, 817 F.2d 865, 869 (D.C. Cir. 1987); Fed. R. Civ. P. 8(c)). Nevertheless, because "res judicata belongs to courts as well as to litigants," the Court may consider the issue sua sponte. Stanton v. District of Columbia Court of Appeals, 127 F.3d at 77.

reviewable by statute and final agency action *for which there is no other adequate remedy in a court*." 5 U.S.C. § 704 (emphasis added); <u>see</u> <u>also</u> <u>Council of and for the Blind v. Regan</u>, 709 F.2d 1521, 1531 (D.C. Cir. 1983) (en banc).

Defendant relies heavily on the decision by Judge James Robertson in <u>Love v. Veneman</u>, Civil Action No. 00-2502, slip op. (D.D.C. Dec. 13, 2001) ("<u>Love I</u>"). In that case, plaintiff farmers sought to assert an APA claim against USDA for failure to investigate their civil rights complaints. Judge Robertson held that plaintiffs could not state a claim for relief under the APA because "Circuit precedent requires the rejection of APA claims for agency failure to investigate allegations of discrimination where Congress has provided an adequate alternative remedy." <u>Love I</u> at 13 (citing <u>Women's Equity Action League v. Cavazos</u>, 906 F.2d 742, 750-51 (D.C. Cir. 1990); <u>Council of and for the Blind v. Regan</u>, 709 F.2d at 1531-33).[7] On appeal, the court of appeals remanded the case to Judge Robertson for further proceedings because it found the record "little developed on [the APA] argument." <u>Love v. Johanns</u>, 439 F.3d 723, 733 (D.C. Cir. 2006). The issue remains in briefing before Judge Robertson.

This Court finds Judge Robertson's reasoning persuasive in the context of this case. Circuit precedent does indeed hold that an adequate alternative remedy for discrimination by agencies generally prevents recourse to the APA. "[T]he APA specifically provides that, if other remedies are adequate, federal courts will not oversee the overseer. <u>See</u> 5 U.S.C. § 704." <u>Coker v. Sullivan</u>, 902 F.2d 84, 89 (D.C. Cir. 1990). <u>See</u> <u>also</u> <u>Women's Equity Action League v.</u>

---

[7]     Judge Robertson also dismissed plaintiffs' "non-lending claims" (*i.e.*, their claims relating to discriminatory administration of the USDA's disaster benefits program and the USDA's failure to investigate discrimination complaints) on the ground that they did not state a claim under the ECOA. According to Judge Robertson, neither type of complaint could be said to relate to discrimination in "credit transactions" -- which is what the ECOA prohibits. <u>See</u> 15 U.S.C. § 1691(a).

Cavazos, 906 F.2d at 748, 750-51 (statutory remedy specifically providing for suit against the "discriminating entity" generally is adequate and preclusive of a default APA remedy against the overseer agency); Council of and for the Blind v. Regan, 709 F.2d at 1531 (in deciding whether plaintiffs claiming discriminatory use of federal funds could assert APA claims against disbursing agency, key inquiry was whether there was another "adequate remedy for the wrong allegedly inflicted").

   The logic of these cases applies with even more force here.  Unlike the unsuccessful plaintiffs in Women's Equity Action League, Coker, and Council of and for the Blind, Mr. Williams need not rely on an *indirect* remedy against third parties to protect the interests he is asserting; he may sue the offending "overseer" agency *directly* under ECOA.  In that sense, Mr. Williams' alternative remedy under the ECOA is even stronger and more direct than the remedies considered adequate in the cases just discussed.  Moreover, unlike the plaintiffs in Love v. Veneman, Mr. Williams' claim against the USDA appears to fall squarely within the terms of the ECOA's provisions authorizing suits against the government for discrimination in "credit transactions."  See 15 U.S.C. § 1691(a).  Thus, it would be difficult to argue that Mr. Williams lacks an adequate alternative remedy.  The Court therefore will dismiss plaintiff's APA claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.


### D.  Fifth Amendment Due Process Claim

   Plaintiff alleges that the defendant violated his Fifth Amendment due process rights by not following its own normal procedures and its own legal obligations to provide

required notices, and by concealing a debt that the USDA was asserting against the plaintiff for over six years prior to notifying him of the debt and the accrued interest.  See Am. Compl. ¶¶ 50-56, 66.  He therefore requests relief from the debt the defendant is asserting against him as well as attorneys' fees and costs.  Id.  It is not clear whether plaintiff is also seeking damages under this claim.  See id.

The due process clause of the Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V. Generally, procedural due process requires adequate notice and a meaningful opportunity to be heard at some point before a right or interest is forfeited.  See Mathews v. Eldridge, 424 U.S. 319, 334 (1976).  Some courts have held (or assumed) that USDA must comply with the dictates of the Due Process Clause when administering its loan and support programs.  See, e.g., Johnson v. U.S. Dep't of Agriculture, 734 F.2d 774, 782-84 (11th Cir. 1984); Coleman v. Block, 663 F. Supp. 1315, 1331-33 (D.N.D. 1987), vacated on other grounds, Coleman v. Lyng, 864 F.2d 604 (8th Cir. 1988).  In this case, plaintiff does not argue that the rules and regulations governing USDA farm loan servicing, including the regulations providing for notice of outstanding debts after foreclosure, are constitutionally insufficient.  Rather, plaintiff seeks to demonstrate that he was denied due process by showing that USDA failed to comply with its own rules and regulations.  See Compl. ¶¶ 12, 50, 55, 56.

As an initial matter, it is unclear whether Mr. Williams could recover under this theory even if the Court found in his favor on the law.  Plaintiff's Supplemental Filing in Opposition to Defendant's [Court Designated] Motion for Summary Judgment, filed on September 13, 2007, suggests that at least some of the plaintiff's debt to the defendant was released from liability in 2005.  See Pl. Supp., First Supplemental Sworn Statement of Darrell

18

W. Williams and attached Annual Statement of Loan Account; Form 1099-C, Cancellation of Debt. A sworn statement from the plaintiff implies that this release covers all of the debt in question in this litigation, but perhaps not associated penalties. See id.; see also Def. Supp., Affidavit of Lisa Burgay ¶ 4 (Mr. Williams' debt was cancelled as of June 13, 2005 because of expiration of statute of limitations). Thus, it is difficult to tell whether the defendant is still seeking to enforce any sort of obligation as against the plaintiff.

This is a crucial point. If defendant has foresworn all of its claims against the plaintiff, then plaintiff's Fifth Amendment claim is probably not compensable -- plaintiff would not be entitled to any declaratory or injunctive relief and would not be able to recover damages; in fact, his claim now may be moot.[8] If, on the other hand, the defendant still seeks to enforce some sort of obligation against the plaintiff, then the plaintiff may be entitled to declaratory or injunctive relief under the Fifth Amendment. Because the parties' papers do not make clear whether Mr. Williams' obligations have been forgiven in their entirety, the Court at this stage will address the Fifth Amendment claim as if some obligations remain.

Defendant argues in a single paragraph of its opposition that plaintiff's due process claim must fail because plaintiff has failed to set forth in his first amended complaint the exact procedures and regulations with which the USDA failed to comply. See Mot. at 25-26. As noted above, the evidence provided by defendant appears to support its contention that it has followed the process set forth in the Code of Federal Regulations with respect to foreclosing on Mr. Williams' farm and selling it, and Mr. Williams has not disputed that evidence. These

---

[8]      It is unlikely that he would be able to recover damages in any event. See Bartel v. FAA, 725 F.2d 1403, 1415 n.20 (D.C. Cir. 1984) (sovereign immunity bars due process damages suits against the United States or its officials in their official capacity).

documents, however, are an incomplete recitation at best.  Defendant has not presented evidence, for instance, as to whether the defendant followed the procedure set forth in the regulations for providing additional information to a borrower after that borrower's land has been sold and the debt has not been fully satisfied.  <u>See</u> 7 C.F.R. § 1965.26(g)(3) (1995) (stating that where the sale of a property is less than the debt owed, the borrower will be given Form FmHA 1965-8).  Instead, the parties engage in extensive debate over various letters concerning administrative offset and other information sent to Mr. Williams, and apparently not received (for whatever reason).  This does not assist the Court in determining the ultimate issue -- whether defendant followed the necessary procedural requirements imposed upon it by its own rules and regulations in this case so as to satisfy due process.  The Court therefore will deny without prejudice defendant's court-designated motion for summary judgment with respect to plaintiff's Fifth Amendment due process claim.

In this posture, it would appear that the parties have two choices.  If Mr. Williams' obligations have been forgiven completely, the defendant may communicate that fact to Mr. Williams in clear and comprehensive terms.  In that case, there may be nothing left of Mr. Williams' remaining claim, and he may be satisfied to dismiss it.  Alternatively, the parties may choose to engage in another round of briefing as to who should prevail on plaintiff's Fifth Amendment claim, taking care to explain to this Court which procedures the defendant was required to follow with regard to Mr. Williams, and whether the defendant did or did not follow those procedures.  If the parties choose the latter course, they should endeavor to keep their filings as brief as possible.

III.  CONCLUSION

20

For the reasons set forth in this Opinion, defendant's court-designated motion for summary judgment is granted with respect to plaintiff's ECOA claim and denied without prejudice with respect to plaintiff's Fifth Amendment due process claim. Plaintiff's APA claim is dismissed for failure to state a claim. An Order consistent with this Opinion will issue this same day.

/s/_____
PAUL L. FRIEDMAN
United States District Judge

DATE:   November 8, 2007